## SOUTHERN PAC. CO. v. HUNTSMAN.

(Circuit Court of Appeals, Eighth Circuit. November 3, 1902.)

No. 1,667.

1. MASTER—INJURY TO EMPLOYE—RAILWAY COLLISION—NEGLIGENCE—QUESTION FOR JURY.

Where a fireman on a freight train was injured in a collision with another train, due to the failure of the engineer of the latter train to remain at a station as ordered, the questions whether such engineer was incompetent by reason of his carelessness and forgetfulness, and whether the company knew, or in the exercise of ordinary care might have known, that he was incompetent, *held*, under the evidence, to be for the jury.

2. SAME—DUTY OF RAILROAD IN THE EMPLOYMENT OF ENGINEERS.

Since the proper performance of the duties of engineers in charge of railway trains depends on their being prudent, alert, and mindful of orders, railway companies must keep a close watch on the habits and mental peculiarities of the persons whom they employ as engineers; this exaction being nothing more than that they exercise ordinary care in the selection of their engineers, in the light of their duties.

3. SAME—EVIDENCE—ADMISSIBILITY.

Where the complaint in an action by a fireman for injuries averred that his only means of escaping serious injury when a collision with another train was imminent was to jump from his engine, which he did, and was injured, and which allegation defendant denied, the admission in evidence of photographs of the wreck, though taken after the positions of the engines had been somewhat changed, was proper, as tending to show the actual result of the collision, and the necessity which existed for the fireman leaping from the engine before the collision occurred.

4. SAME.

The admission of testimony that five other persons were injured in the collision was proper, for the same reason.

In Error to the Circuit Court of the United States for the District of Utah.

Jeptha D. Howe, for plaintiff in error.
W. L. Maginnis, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge. On December 11, 1900, Arthur Huntsman, the defendant in error, was a fireman on an engine belonging to the Southern Pacific Company, the plaintiff in error, which was hauling one of its trains westwardly on its railroad. At a point from 2 to 2½ miles distant from a station in the state of Utah called "Fenelon," it ran into another freight train of the Southern Pacific Company, which was running east at the rate of about 25 miles an hour. The engine of the east-bound train was in charge of an engineer by the name of Sadler, and the collision occurred because Sadler, instead of waiting at Fenelon for the west-bound train to pass, as he had been ordered to do by the train dispatcher, in violation of his orders ran past Fenelon until he came into collision with the west-bound train. The evidence tended to show that the collision occurred on a curve; that the engine of the east-bound train was not discovered

until it was about 50 yards distant from the engine of the west-bound train, on which Huntsman was fireman; that, after the discovery of the train approaching from the west, it was impossible to stop the trains in time to avoid the collision; and that, in consequence of that fact, Huntsman leaped from the cab of his engine, and was injured to a considerable extent. He brought the present action to recover damages for the injury which he had sustained in consequence of the collision, and alleged, as a ground of recovery, that Sadler was incompetent to act as engineer of a locomotive engine upon the railroad in question, or upon any railroad, by reason of his being a careless and forgetful person, which fact, as it was alleged, was well known to the defendant company, or, in the exercise of reasonable and ordinary care, ought to have been known. The principal error assigned, and the one that is argued at the greatest length, is that the court erred in refusing to give a peremptory instruction directing the jury to return a verdict in favor of the defendant company. This exception to the action of the lower court, in view of its importance, will be first noticed.

The contention that a peremptory instruction in favor of the defendant company ought to have been given is based upon the ground that there was no substantial evidence tending to show that Sadler was an incompetent engineer, or that the defendant had notice of the fact prior to the collision. To sustain the charge of incompetency, the plaintiff below introduced the following evidence: First, a record kept by the company itself, which showed that Sadler had been in its employ from time to time since August 12, 1892, serving in the capacity of fireman, car inspector, and hostler; that since November, 1898, he had acted as engineer,—a part of the time as engineer on a switch engine, and later, since February, 1899, as engineer on the main line; that on August 24, 1900, he had been suspended for overlooking a train order, though no collision resulted therefrom; that he had remained suspended until December 5, 1900, when he was reinstated, and that only six days thereafter, to wit, on December 11, 1900, by disobeying or forgetting his orders, and running past Fenelon, he had occasioned the collision which gave rise to the present action. There was other evidence which tended to show, and did show, that in August or July, 1899, a train on the defendant's road, which was running west on regular time, had to back up a mile or two because it met Sadler with his engine on the main line, running an extra, without orders, on the time of the regular train; that the delay so occasioned was reported to the defendant's superintendent; and that on August 24, 1900, when Sadler was suspended, he also ran out on the main line about a mile from a station, where he should have stopped to allow another train to go by, and encountered that train, which had the right of way, but, the track being straight, no collision occurred. There was evidence tending to show that on another occasion he had forgotten his orders commanding him to stop at a certain way station, and that he would have run past it and encountered another train but for the fact that his attention was called to his orders by his fireman, who had some difficulty in convincing him that he had orders to stop. There was also evidence by one witness, who was a fireman

who had served under Sadler, tending to show that he was forgetful, and that he had the reputation among other employés of the defendant company of being forgetful, and for that reason incompetent. In view of this testimony, it cannot be said that there was no substantial evidence tending to show that Sadler was unfit to be trusted with the management of a train. It is true, no doubt, that the best of engineers will occasionally make a mistake and suffer a momentary lapse of memory; and for this reason a single error of judgment or a single act of forgetfulness ought not, as a rule, to be esteemed sufficient to warrant the conclusion that an engineer is untrustworthy. But in the present case the evidence had a marked tendency to show something more than a single lapse of memory. It tended to prove that Sadler, either through a defect of memory or other cause, was liable to overlook his orders and take dangerous risks, and that the defendant company, in the exercise of ordinary care, ought to have been aware of the fact. At all events, in view of the testimony to which we have alluded, it was the function of the jury, rather than the trial judge, to determine whether he was the kind of a man to whom the company ought to have intrusted the handling of a train. It cannot be said, we think, that all reasonable persons, in view of the testimony, would have reached the conclusion, necessarily, that there was no substantial evidence tending to establish Sadler's incompetency. Owing to the responsible duties which engineers in charge of railway trains perform, and the fact that many lives and much valuable property depend upon their being prudent, alert, ever mindful of their orders, and not given to fits of abstraction, railroad companies ought to keep a close watch on the habits and mental peculiarities of the persons whom they employ in such responsible positions. This is exacting from them nothing more than the exercise of ordinary care in the selection of that class of employés, when the responsible nature of the duties which they perform, and the consequences that may result from a slight mistake, which in other employments would be trivial, is taken into account. We are of opinion, therefore, that the learned judge of the trial court properly allowed the jury to determine whether the injury of which the plaintiff complained was due to the fact that the company had retained in its service as engineer a person whom it ought to have known was incompetent to discharge the particular duties that had been devolved upon him.

The defendant company also saved a number of exceptions to the admission of testimony, and have argued the same in this court, but a careful examination of these exceptions has served to convince us that they are without merit. Most of them are of so little moment, we think, as not to require special notice. It is strenuously urged by counsel for the defendant company that the trial court should not have admitted two photographs of the wreck, and that it also erred in permitting the plaintiff to testify in his own favor, on his redirect examination, that five other persons besides himself were injured by the collision. Concerning this testimony, it is said that it was immaterial and irrelevant, and that the photographs of the wreck should not have been admitted in evidence, because they were taken after the

positions of the wrecked engines had been somewhat changed. It is also said that this testimony was harmful to the defendant, because it aroused the sympathy of the jury for the plaintiff, excited their indignation, and diverted their minds from the real questions in controversy. We are of opinion, however, that the admission of the testimony, even if it was not very material, would not warrant a reversal of the judgment. Nor are we able to concede that the testimony was, as claimed, immaterial. The plaintiff below had averred in his complaint that his only means of escaping serious injury when the collision was imminent was by jumping from the engine, and that he did so jump, thereby sustaining injury. The defendant company denied this allegation, and for this reason it was competent for the plaintiff to show the actual result of the collision, and the necessity which existed for leaping from the engine before the shock of the collision occurred. He could show this fact in no better way than by producing photographs of the wreck, and by testifying that other persons besides himself were injured; and, while there was some testimony that one or both of the engines had been moved slightly before the photographs were taken, yet, as the plaintiff testified that the photographs, as taken, correctly showed the extent to which the engines were broken up by the collision, the fact that they had been moved slightly in no way impaired the competency of the evidence for the purpose for which it was admitted. It is clear, we think, that no material error was committed in permitting the photographs to be shown, or in permitting the plaintiff to testify that five other persons besides himself sustained injury. Three of the men so injured were killed, but the trial court was so careful, as it seems, to prevent the admission of any unnecessary testimony which might prejudice the defendant's case, that it declined to permit the fact to be proven that three persons were killed. It simply permitted the plaintiff to testify that five other persons were hurt.

The case was fairly tried throughout, and no sufficient ground is disclosed by the record for reversing the judgment. It is accordingly affirmed.