## SOUTHERN PAC. CO. v. HETZER.

### (Circuit Court of Appeals, Eighth Circuit. January 25, 1905.)

### No. 2,039.

1. PERSONAL INJURY—DAMAGES—MENTAL PAIN SEPARABLE FROM BODILY SUFFERING INADMISSIBLE.

In actions for personal injury the plaintiff may recover for the bodily suffering and mental pain which are inseparable and which necessarily and inevitably result from the injury. But mortification and distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from the bodily suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case, and evidence of it is inadmissible.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 100, 222, 255-259, 479.

Mental suffering as an element of damages, see note to Chicago, R. I. & P. Ry. Co. v. Caulfield, 11 C. C. A. 556.]

2. NEGLIGENCE—DUTY OF MASTER TO EMPLOY COMPETENT SERVANTS.

It is the duty of the master to exercise reasonable care to employ competent servants, and, when he has exercised this care, this duty is discharged.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 336.] ,

3. SAME—DUTY OF MASTER TO DISCHARGE INCOMPETENT SERVANT.

Another duty of the master is to discharge a servant when he knows or by the exercise of reasonable diligence would have known, that the servant has contracted the habit or character of negligence, of drunkenness, or of lack of skill, so that he is incompetent.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 342-346.]

4. SAME—CARE REQUIRED TO ASCERTAIN HABITS OF COMPETENT SERVANTS—PRESUMPTION THAT COMPETENT SERVANT REMAINS SO.

The diligence required of the master to learn the habits or characters of servants employed with due care is not of that degree demanded in his employment of servants or in his inspection of machinery, because careful and skillful men grow more careful and skillful, and the legal presumption is that servants once competent continue so. The master may rely upon the presumption of competency until he has notice or knowledge to the contrary.

5. SAME—REASONABLE CARE OR DILIGENCE REQUIRED NOT THAT WHICH EMPLOYER USES TO PROTECT HIS OWN PERSON.

The reasonable diligence and care which the master is required to exercise here is not that high degree of care which a prudent business man would use if the want of it endangered his own person. It is that degree of care which prudent railway officials exercise under like circumstances, that care which such officials charged with the duty of discharging servants employed with due care commonly exercise as soon as they know, or by the exercise of reasonable diligence would know, that such servants have become incompetent.

**6. SAME—ASSUMPTION OF RISK—OCCASIONAL ACTS OF NEGLIGENCE.**

Servants assume the risk of the occasional acts of negligence of their fellow servants, and the master is not liable for them, but the servants may by notice cast the risk of the habitual negligence of their co-employés upon the master.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 567–573.

Assumption of risk incident to employment, see note to Chesapeake & O. Ry. Co. v. Hennessey, 38 C. C. A. 314.]

**7. SAME—SPECIFIC ACTS OF NEGLIGENCE—THOSE KNOWN TO MASTER ADMISSIBLE TO PROVE INCOMPETENCE OF SERVANT.**

Evidence of specific acts of negligence known to the master, and of acts of negligence like those which cause the death of passengers, so notorious that the master must have known of them if he exercised reasonable diligence, is admissible to prove the habit or character for incompetence of a servant who is employed with due care.

**8. SAME—SPECIFIC ACTS OF NEGLIGENCE—THOSE UNKNOWN TO MASTER INADMISSIBLE TO PROVE INCOMPETENCE OF SERVANTS.**

Specific acts of negligence, of drunkenness, of lack of skill, or of incompetence, of which the master had no notice, are inadmissible to prove the incompetence of a servant employed with due care. The proper proof of habit and character, as of reputation, in such a case, is the testimony of witnesses qualified to speak of them, subject to proper cross-examination relative to the facts upon which their testimony is based.

**9. SAME—GENERAL REPUTATION—REPUTATION IN A PARTICULAR CLASS.**

After proof of the incompetence of a servant, his general reputation among those acquainted with him or his work is competent to prove notice of the habit of incompetence to the master. But reputation among a particular class, which obviously includes but a part of those who knew his character or work, is inadmissible for this purpose.

**10. PRACTICE—REFUSAL TO GIVE SEVERAL REQUESTS—SINGLE EXCEPTION.**

A single exception to a refusal to give a number of requests to submit to the jury several propositions of law and of fact is futile, if any of those propositions is erroneous or inapplicable.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Utah.

Henry G. Herbel (Martin L. Clardy, on the brief), for plaintiff in error.

Herbert R. Macmillan (Hiram H. Henderson, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. About 5 o'clock in the afternoon of July 23, 1902, P. R. Hetzer, the plaintiff below, was the brakeman on the rear of a train of 22 cars which Tom Delano, one of the engineers of the Southern Pacific Company, was backing into a gravel pit. As this train approached a switch which it was Hetzer's duty to throw, he gave the slow signal, and his fellow brakeman gave the stop signal, to the engineer. Delano applied the air, Hetzer fell to the track, one of the wheels of the rear car passed over his leg, and the train stopped. The injury to the leg necessitated its amputation above the knee. He sued the company for causal negligence for employing and keeping in its employment an incompetent engineer. At the trial there was no

135 F.—18

evidence to sustain his averment that the company was guilty of negligence in selecting and employing Delano, this charge was withdrawn from the jury by the court, and the only issues submitted to them were the question whether or not the defendant was guilty of any want of ordinary care in continuing Delano in its employment at the time of the accident, and the amount of plaintiff's damages. There was a verdict and judgment against the company for $11,450.

It is assigned as error that at the trial of the action, more than 15 months after the accident, in answer to questions of his counsel relative to the effect upon his mind at that time of the injury to his leg, the plaintiff testified that the fact that other people looked down upon him because he was crippled, and seemed to shun him, made him feel very badly and distressed him mentally. There is a conflict of authority upon the question which this assignment presents. In some states, notably in Wisconsin and Michigan, evidence of mental pain caused by disfigurement, apart from the physical suffering produced by an injury, is admissible to enhance the damages in an action for personal injury. Heddles v. Chicago & N. W. Ry. Co. (Wis.) 46 N. W. 115, 116, 20 Am. St. Rep. 106, and cases there cited; Sherwood v. Chicago & W. M. Ry. Co. (Mich.) 46 N. W. 773, 776. The rule which has been adopted by this court, however, and the rule which seems to us the better one, is that in actions for personal injury the plaintiff may recover for the bodily suffering and the mental pain which are inseparable and which necessarily and inevitably result from the injury. But mortification or distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case, and evidence of it is inadmissible. Chicago, R. I. & P. Ry. Co. v. Caulfield, 63 Fed. 396, 399, 11 C. C. A. 552, 555; Kennon v. Gilmer, 131 U. S. 22, 26, 9 Sup. Ct. 696, 33 L. Ed. 110; Bovee v. Danville, 53 Vt. 183; C., B. & Q. R. Co. v. Hines, 45 Ill. App. 299, 302, 303; City of Salina v. Trosper, 27 Kan. 544, 564; Dorrah v. Railway Co., 65 Miss. 14, 3 South. 36, 7 Am. St. Rep. 629; Railway Co. v. Stables, 62 Ill. 313, 321; Joch v. Dankwardt, 85 Ill. 331, 332; Johnson v. Wells, Fargo & Co., 6 Nev. 224, 236, 3 Am. Rep. 245. Mental pain of this character, the suffering from injured feelings, is intangible, incapable of test or trial. The evidence of it, like that which convicted the alleged witches, rests entirely in the belief of the sufferer, and it is not susceptible of contradiction or rebuttal. Many other causes, the education, temperament, and sentiment of the sufferer, the mental attitude, the acts and words, of his friends and acquaintances, concur with the accident to cause this mental distress, in such a way that it is impossible to separate and ascribe the proper part of it to the injury caused by the defendant. And the amount of the mental pain caused by any disfigurement necessarily varies so with the character, temperament, and circumstances of the injured person that no just measure of the damages from it can be found. Such mental suffering is too remote, intangible, and immeasurable to form the basis of any just adjudication, and the objections to the testimony of the plaintiff concerning it should have been sustained.

One of the counsel for the plaintiff asked him if there was any other occurrence of sudden stopping or jerking of the train while Delano was acting as engineer during the day of the accident. Defendant's counsel promptly objected to the testimony which the question was intended to elicit, upon the ground that it was evidence of a specific act other than the one pleaded. The witness testified that about three hours before the accident Delano stopped his train in a very rough manner, so that the plaintiff staggered around, but did not fall. Evidence of another act of Delano of a similar character was admitted, under a like objection, and these rulings of the court are assigned as error. The issue of law which these rulings present is not without importance, and it may be well, before entering upon its discussion, to place clearly before the mind the legal relation of the plaintiff and the defendant, and the exact question to be decided. It is the duty of the master to exercise reasonable care to employ competent servants to work with his employés. When he has exercised this care, he has fully discharged this duty. There is another duty of the master. It is to discharge a servant whom he has employed with due care when the employé has contracted the habit of negligence or of lack of skill, so that he has become incompetent, and the master knows, or by the exercise of reasonable care would have known, of this habit. This duty, however, is not imposed until the habit has been formed, nor until the master knows, or by the exercise of reasonable care would have known, of its existence. It is not invoked by occasional acts of negligence. Wood's Law of Master and Servant (2d Ed.) § 432. Moreover, the master is not required to exercise that degree of care to ascertain this habit which is imposed upon him in reference to the selection of employés or the inspection of machinery which deteriorates with its use, because careful and skillful men become more careful and skillful with the practice of their occupations or professions, and the legal presumption is that competent servants continue to be so, and because servants assume the risk of the negligence of their fellows, a risk which, when that negligence becomes habitual, they may cast upon their master by a simple notice of their incompetence. When the master has exercised due care to employ a servant, he may rely upon the presumption of his competency until he has notice or knowledge to the contrary. Walkowski v. Consolidated Mines, 115 Mich. 629, 634, 73 N. W. 895, 41 L. R. A. 33; Weeks v. Scharer, 49 C. C. A. 372, 378, 111 Fed. 330, 336; Chapman v. Erie R. Co., 55 N. Y. 579, 585, 586; 1 Bailey on Master and Servant, § 1413; 1 Labatt on Master and Servant, p. 428; Wood's Law of Master and Servant (2d Ed.) § 433, p. 841.

One who enters the service of another assumes all the ordinary risks and dangers of that service. One of those risks is the danger of injury from the negligence of his fellow servants. The association of a servant with his co-workmen, as in the case at bar of a brakeman in the same crew with an engineer, is often closer, his knowledge of their characters, habits, and competence more intimate and more exact, than that of his master can be. As he generally has a better knowledge of the characters, habits, and negligence of his fellow servants, he is better able to protect himself against their negligence than the master can be, and for this reason the law charges him with the risk. So it is

that under the law the duty of employing fit servants is imposed upon the master, and, when that duty is discharged, the duty of protecting themselves against the negligence of their fellow servants is imposed upon the employés.

The claim of the plaintiff is that his master was negligent because it retained in its employment one whom it engaged with due care after he had become incompetent by reason of his habitual negligence in the use of the air to stop his trains. But the risk of the negligence of this servant was prima facie that of the plaintiff. One who would charge the master with negligence here must prove not only that the servant was incompetent, but that the master knew, or by the exercise of reasonable diligence would have known, of his unfitness. A habit of negligence that is known, or that by the exercise of reasonable care would have been known, to a master, and notorious acts of negligence, such as those which cause collisions of trains and the death of passengers, may render a servant incompetent, and impose upon the master the duty of discharging him. A single specific act of ordinary negligence, however, has no tendency to prove incompetence, and imposes no such duty upon the master, because perfection is not an attribute of humanity, because ordinary care implies occasional forgetfulness, and hence the risk of the casual negligence of his fellow servant is that of the servant, and not that of the master. Wharton on Law of Negligence, § 238; Baltimore Elevator Co. v. Neal (Md.) 5 Atl. 338, 343; Davis v. Detroit, etc., R. Co., 20 Mich. 105, 4 Am. Rep. 364; Moss v. Pacific Rd. Co., 49 Mo. 167, 8 Am. Rep. 126; Wood's Law of Master and Servant, § 432.

Specific acts of negligence of which the master has notice are conceded to be admissible to prove incompetence, and a general reputation for incompetence is admissible to show that the master, by the exercise of ordinary care, would have known of the incompetence of the servant. In the case at bar there was no evidence that the master knew, or that by the exercise of reasonable care it would have known, of the two specific acts of negligence, the evidence of the commission of which is here challenged, and the question is, are specific acts of negligence of which the master has no notice admissible to prove the incompetence of his servant whom he has exercised due care to employ?

The burden of proof was upon the plaintiff to show (1) that the engineer had contracted the habit of negligence in the use of the air to stop his trains, to such an extent that he was an incompetent operator, and (2) that he had so notorious a reputation for this incompetence that the defendant, by the exercise of reasonable diligence, must have known it. The contention of counsel for the plaintiff is that specific acts of negligence are admissible to prove the habit, the character, and hence the fact of incompetence. Counsel for the defendant insist that this fact is properly evidenced by the testimony of those who knew the habit or character alone, and that isolated acts are inadmissible to establish it, because the habit or character is conditioned not by a few sporadic deeds, but by all the acts of the employé which relate to the charge against him. In support of their position, counsel for the plaintiff have cited the following cases: Cosgrove v. Pitman, 103 Cal. 268, 275, 37 Pac. 232; Gier v. Los Angeles Consol. Electric Ry. Co., 108

Cal. 129, 131, 132, 41 Pac. 22, 23, 24; Western Stone Co. v. Whalen (Ill.) 38 N. E. 241, 244, 42 Am. St. Rep. 244; Baulec v. N. Y. & Harlem R. R. Co., 59 N. Y. 356, 358, 360, 17 Am. Rep. 325; Southern Pac. Co. v. Huntsman, 55 C. C. A. 366, 367, 118 Fed. 412, 413; Davis v. Detroit, etc., R. Co., 20 Mich. 105, 113, 123, 124, 125, 4 Am. Rep. 364; Norfolk & W. R. Co. v. Hoover (Md.) 29 Atl. 995, 996, 25 L. R. A. 710, 47 Am. St. Rep. 392; Monahan v. City of Worcester (Mass.) 23 N. E. 228, 15 Am. St. Rep. 226; Lake Shore, etc., R. Co. v. Stupak (Ind.) 23 N. E. 246, 249; B. & O. Railroad Co. v. Henthorne, 19 C. C. A. 623, 627, 73 Fed. 634, 637, 638; 1 Labatt on Master and Servant, §§ 411–414. The learned author of the work last cited expresses an opinion favorable to the contention of plaintiff's counsel, but the authorities to which he refers in his notes in support of his view present cases in which notice of the specific acts was brought home to the master, such as Pittsburgh, etc., Ry. Co. v. Ruby, 38 Ind. 294, 298, 318, 10 Am. Rep. 111; Couch v. Watson Coal Co., 46 Iowa, 17, 24; Grube v. Missouri Pac. Ry. Co., 98 Mo. 330, 11 S. W. 736, 4 L. R. A. 776, 14 Am. St. Rep. 645; Sutton v. N. Y., L. E. & W. R. Co. (Sup.) 21 N. Y. Supp. 312; Barkley v. N. Y. Cent. & H. R. Co. (Sup.) 54 N. Y. Supp. 766, 769; Malay v. Mt. Morris Electric Light Co. (Sup.) 58 N. Y. Supp. 659; and Consolidated Coal Co. v. Seniger, 179 Ill. 370, 53 N. E. 733—cases in which the remarks of the courts upon the admissibility of the acts were obiter dicta, as in Gier v. Los Angeles Consol. Elec. Ry. Co., 108 Cal. 129, 130, 131, 132, 41 Pac. 22, 23, 24, and cases where the habit of drunkenness or of negligence was proved, presumably by competent witnesses who knew it, and no question of the admissibility of specific acts to establish it was considered or decided, as in Hilts v. Chicago & G. T. Ry. Co. (Mich.) 21 N. W. 878, 882; so that the argument of Mr. Labatt is not as persuasive as it would have been if it had been supported by decisions of courts which had necessarily considered and decided the question.

Bearing in mind, now, that it is conceded that specific acts of incompetence of the servant, notice of which was brought home to the master before the accident, are admissible on the issue of his negligence in failing to discharge him, and that the question here is not whether acts known to the master, or so notorious that they ought to have been known, are admissible, but whether or not specific acts of which he had no notice or knowledge are competent to establish the incompetence of the servant, let us consider the authorities upon which counsel for the plaintiff rely.

In Cosgrove v. Pitman, 103 Cal. 268, 275, 37 Pac. 232, evidence of several specific acts of drunkenness of which the master had no notice was introduced, and the court held that an instruction that, if an engineer was unsteady and unreliable on account of a habit of drinking intoxicating liquors to excess, he was not a competent operator, was erroneous, and reversed the judgment which had been rendered for the plaintiff, because the specific acts did not constitute competent evidence of the incapacity of the servant. The court said:

"Proof of specific acts is not equivalent to proof that Murphy had either this reputation or the habit. 'Character for care, skill, and truth of witnesses, parties, or others must all alike be proved by evidence of general reputa-

tion; and not of special acts. 1 Greenleaf on Evidence, §§ 461–469. Character grows out of special acts, but is not proved by them, though, indeed, special acts do very often indicate frailties or vices that are altogether contrary to the character actually established; and sometimes the very frailties that are proved against a man may have been regarded by him in so serious a light as to have produced great improvement of character.' Frazier v. Pennsylvania R. R. Co., 38 Pa. 110, 80 Am. Dec. 467."

In Gier v. Los Angeles Consol. Elec. Ry. Co., 108 Cal. 129, 130, 131, 132, 41 Pac. 22, 23, 24, the conductor of a motor car sued his master for retaining a careless motorman. Evidence that the motorman's reputation for care was bad was introduced, but there was no evidence that he had the habit of negligence, or that he had been guilty of any specific acts of negligence before the accident. The court reversed the judgment for the plaintiff, upon the ground that a reputation for negligence was insufficient alone to prove the fact of negligence, and in the course of its argument said that evidence of individual acts evincing negligence or incompetence was admissible to prove the fact. This remark, however, was an obiter dictum. The question whether or not such acts, unknown to the employer, were admissible for this purpose, was not presented by the record in that action. The decision of that question was neither necessary nor material to the determination of the case, and the court which decided that case, in Cosgrove v. Pitman, where the decision of the question was necessary to the adjudication of the case, expressly held that specific acts were not admissible to prove the alleged unfitness of the employé.

In Western Stone Co. v. Whalen (Ill.) 38 N. E. 242, 243, 244, 42 Am. St. Rep. 244, the court remarked, in the course of the opinion, that it seemed to be well settled that proof of specific acts was admissible to establish incompetency. But that question was not before the court for adjudication, and its dictum is without authority. The question the court was considering in that case, and the one it decided, was whether or not evidence of reputation was admissible to show notice to the master. No other opinion cited by counsel for the plaintiff either discusses or decides the question before us for determination.

In Lake Shore, etc., R. Co. v. Stupak (Ind.) 23 N. E. 246, 249, the habit of recklessness was alleged and proved; and in B. & O. Rd. Co. v. Henthorne, 19 C. C. A. 623, 627, 73 Fed. 634, 637, 638, and Norfolk & W. R. Co. v. Hoover (Md.) 29 Atl. 995, 996, 25 L. R. A. 710, 47 Am. St. Rep. 392, the habit of drunkenness was proved. But there is nothing in the reports of either of these cases to indicate that specific acts of negligence or of drunkenness were received to establish these habits, or that they were not proved by the testimony of qualified witnesses who were acquainted with them. Indeed, in the case last cited, the court said:

"The evidence overruled and admitted related to specific or isolated acts of negligence. These, unless brought home to the knowledge of the master, would not have been admissible as reflecting on the question of the master's care."

In Monahan v. City of Worcester (Mass.) 23 N. E. 228, 15 Am. St. Rep. 226, there is no reference to the issue in hand.

In Baulec v. N. Y. & Harlem R. R. Co., 59 N. Y. 356, 358, 360, 364, 17 Am. Rep. 325, and in Southern Pac. Co. v. Huntsman, 55 C.

C. A. 366, 367, 118 Fed. 412, 413, notice of specific acts was brought home to the master, and for that reason they were clearly admissible.

And in Davis v. Detroit, etc., R. Co., 20 Mich. 105, 113, 124, 128, 4 Am. Rep. 364, a judgment in favor of the defendant was sustained, because the knowledge of specific acts of negligence, proof of which was introduced in the case, was not brought home to the master.

This brief review of the opinions to which counsel for the plaintiff have referred us discloses the fact that, while there are two dicta, there is no adjudication among them in support of the position they have taken. And why should there be such a decision? The issue on trial in a case of this character is the negligence of the master, in that he failed to dismiss a servant who was employed with due care, and whom the law presumed to continue to be competent. Why should specific acts of negligence or of lack of skill of such a servant, of which the master has no knowledge or notice, and of which every servant subject to the infirmities of human nature must necessarily sometimes be guilty, be admitted in evidence to establish the negligence of the master in failing to discharge him? The employer is not liable for such acts. The fellow servant has assumed the risk of them. It is only when they have become so grave and numerous as to establish the habit and character, and so notorious as to establish the reputation of lack of care or of skill, that any liability for negligence in retaining the servant can attach to the master. The habit, the character, of a man or of a servant is not made, and it ought not to be provable by isolated, sporadic acts. It is the product of all the acts he performs during his life or his service. If the plaintiff may introduce in evidence two specific acts of alleged negligence of an engineer in stopping his train to prove his habit and character in this regard, and if he has stopped his train a thousand times within a reasonable period preceding the accident, may not the defendant also introduce in evidence the other 998 stops for the same purpose? And may not the parties litigate and submit to the jury the question whether each of these 1000 stops was careful or negligent? It by no means follows from the fact that a servant was guilty of negligence or of a lack of skill on a few specified occasions that he is not ordinarily a careful and skillful workman, and the investigation of his specific acts to ascertain his character and habits would tend to confuse the case with collateral inquiries, which, if carefully made, would indefinitely prolong the trial, and would lead the court and jury far away from the issue before them.

This is not the only reason why such specific acts should not be received. A defendant is entitled to fair notice of the issues upon the trial of which his liability hinges. A complaint that a servant was incompetent, and that the defendant was negligent in that it did not discharge him, informs the master indeed that the habit, character, and reputation of the employé are in issue; but it is no adequate notice that the character of an isolated or specific act which the servant may have committed is to be tried, and that upon the character of that act the liability of the defendant is to hinge, and it gives the master no opportunity to prepare or to fairly try any such issue.

These considerations, and the deliberate and carefully considered adjudications of this question in the cases in which it was necessary to decide it, which are cited below, persuasively lead to the conclusion that specific acts of negligence, of drunkenness, or of incompetence, no notice of which was given to the master before the accident, are inadmissible to prove the incompetence of the servant, or the negligence of the master in failing to discharge him. Hatt v. Nay, 144 Mass. 186, 187, 10 N. E. 807; Connors v. Morton, 160 Mass. 333, 335, 35 N. E. 860; Cosgrove v. Pitman, 103 Cal. 268, 275, 37 Pac. 232; Frazier v. Pennsylvania Rd. Co., 38 Pa. 110, 80 Am. Dec. 467; Norfolk & W. R. Co. v. Hoover (Md.) 29 Atl. 995, 996, 25 L. R. A. 710, 47 Am. St. Rep. 392.

The review of the authorities which the decision of this question has invited, and a consideration of the reasons upon which the rules relating to the liability of the master for negligence in the employment of and in the failure to discharge servants, convince that the following rules are well established, and should prevail in the trial of actions to enforce that liability: It is the duty of the master to exercise reasonable care to employ competent servants, and, when he has exercised this care, this duty is fully discharged. Another duty of the master is to discharge a servant whom he has employed with due care, when he knows, or by the exercise of reasonable care would have known, that the servant has contracted the habit or character of negligence or of lack of skill, so that he has become incompetent. The diligence or care required of the master to learn the habits or characters of servants whom he has employed with due care is not of that degree which is required in his employment of servants or in his inspection of machinery that deteriorates with its use, for the reason that careful and skillful men grow more careful and skillful in the practice of their occupations, and the legal presumption is that servants once competent continue to be so. Servants assume the risk of the occasional acts of negligence of their fellow servants, and the master is not liable for them. The servants may by notice to the master cast upon him the risk of the habitual negligence of their co-employés. Evidence of specific acts of negligence known to the master, and of acts of negligence, like those which cause the death of passengers, so notorious that the master must have known of them if he exercised reasonable diligence, is admissible to prove the habit or character of a servant, who was employed with due care, for incompetence. But specific acts of negligence, of lack of skill, or of incompetence, of which the master had no notice or knowledge prior to the alleged accident, are inadmissible to establish the incompetence of a servant who was employed with due care.

The court instructed the jury that after the defendant had used due care to select and employ the engineer, Delano, it was its duty to exercise that degree of care to supervise his subsequent conduct "that an ordinarily prudent business man would use under similar circumstances if the danger to be apprehended from a want of care was his personal danger." This portion of the charge laid too heavy

a burden on the defendant: (1) Because the supervision and discharge of the engineer did not condition the personal danger of those to whom they were intrusted. The law never requires the impossible, and the imperfection of human nature is such that ordinarily prudent men do not and cannot commonly exercise that high degree of care to insure the safety of others which they instinctively use to protect their own safety. (2) Because the limit of the duty of the defendant was to exercise ordinary care, and the standard of ordinary care is that degree of caution which ordinarily prudent persons commonly exercise under like circumstances—that is to say, in the case at bar, when the danger to be apprehended from the want of care does not condition the personal safety of those who exercise the care—while the court directed the jury to test the duty and the liability by the degree of care ordinarily exercised by such persons under different circumstances; that is to say, when the want of care conditions the personal safety of those who use it. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pac. R. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Choctaw, etc., Ry. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Choctaw, etc., Ry. Co. v. Holloway, 191 U. S. 334, 338, 24 Sup. Ct. 102, 48 L. Ed. 207; Charnock v. Texas & Pac. Ry. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057. And (3) because a rule which would require a master to exercise that high degree of care to supervise the conduct of his servants, after their careful employment, which he would commonly exercise to protect his own person from danger, would abrogate the rule that servants assume the risk of the ordinary negligence of their fellows.

Cases may be found in the books in which courts have expressed the opinion that it was the duty of defendants under certain circumstances to exercise the same degree of care for the persons and property of others that they would use if their own personal danger was conditioned by it, but they involve other duties due under different circumstances, and no decision has been called to our attention which sustains the application of such a rule to the duty of a master to supervise the conduct of servants once carefully selected. Thus, where the liability of one who erects a structure on his own land for damages to the property of his neighbor is in issue, the declaration has sometimes been made that the former should exercise that degree of care which a discreet and prudent person would use, or ought to use, if the whole risk of loss were to be his own exclusively (Mayor v. Bailey, 2 Denio, 433, 440); and "that the question is not what the plaintiffs could have done, but what discreet and prudent men should do, or ordinarily do, in such cases, where their own interests are to be affected, and all the risk their own." Hoffman v. Tuolumne County Water Co., 10 Cal. 413, 419. This, however, is far from declaring that the degree of care required, even in such cases, is that which one would exercise if his own personal danger was involved; and the statement that the care

required is such as a prudent person ought or should be expected to exercise presents a rule that abrogates every criterion of duty and liability, unless these statements are the simple equivalent of the rule that the requisite degree of care is such as ordinarily prudent persons commonly use under like circumstances. Moreover, the degree of care of the property and lives of adjoining proprietors required of those erecting structures on their own land, like the care of passengers which is required of carriers, is much higher than that which a railroad company owes to its employés, who assume the risk of the ordinary negligence of their fellows.

In several cases involving alleged negligence in the selection of appliances, it is said that the master has discharged his whole duty, and has absolved himself from liability, if he has used as much care as a person of ordinary prudence would exercise to protect his own safety (Carlson v. Bridge Co., 132 N. Y. 273, 30 N. E. 750; Probst v. Delamater, 100 N. Y. 266, 3 N. E. 184; Sappenfield v. Railroad Co., 91 Cal. 48, 27 Pac. 590; Brymer v. Southern Pac. Co., 90 Cal. 496, 498, 27 Pac. 371), a statement obviously correct, whether ordinary care is that which prudent men commonly exercise un- der similar circumstances, or that which such men would exercise if the danger from the lack of it was their own personal danger; so that the decisions in these cases do not rule this question.

There are other opinions which treat of the master's duty to exercise care in the selection of tools and machinery, and one in which the care of the place of work was in question,, in which declarations have been made that the ordinary care which the master was required to use was such as a man of ordinary prudence would employ, or would be expected to employ, to secure his own safety if he was to do the work. Westinghouse, etc., Co. v. Heim- lich, 127 Fed. 92, 94, 62 C. C. A. 92; Burke v. Witherbee, 98 N. Y. 562, 565; Hoffman v. Dickinson, 31 W. Va. 142, 152, 6 S. E. 53; Berns v. Coal Co., 27 W. Va. 285, 55 Am. Rep. 304; Central R. Co. v. Ryles, 84 Ga. 430, 11 S. E. 499; Louisville & Nashville R. Co. v. Allen, 78 Ala. 494; Smoot v. Ry. Co., 67 Ala. 13, 18. These deci- sions, however, do not commend themselves to our judgment, be- cause they require of employés, the discharge of whose duties does not condition their personal safety, the exercise of a degree of care that is extraordinary and unattainable, and because the courts in those cases did not consider or determine the degree of care re- quired of employés whose duty it is to discharge competent work- men for subsequent negligence, the ordinary risk of which the co- employés assume in the first instance.

For the same reasons, and also because that statement has been repeatedly repudiated by the later decisions of the Supreme Court, the declaration of that court in Wabash R. Co. v. McDaniels, 107 U. S. 459, 2 Sup. Ct. 932, 27 L. Ed. 605, to the effect that the ordi- nary care required of corporations in the selection of employés is not the care which prudent and cautious officials charged with that duty ordinarily exercise in similar circumstances, but that degree of care which such officials ought to exercise in such cir- cumstances, is neither persuasive nor controlling. By what stand-

ard could that requisite degree of care be measured under that declaration? What is the test of duty or of liability under it? Does it not abrogate every test, and leave the determination of the degree of care which conditions the liability of masters to their servants to the necessarily varying opinions of courts and juries, formed after the events, as to the care which such masters ought to use, so that neither master nor servant could ever know under it until long after his action what the limit of his duty or liability was to be in any case, and so that the degree of care required in any two cases arising under like circumstances would never be the same? This declaration in the McDaniels Case was made 22 years ago. The question of law which it treated has since been considered, and decided otherwise by the Supreme Court again and again. That court has cited and referred to its decisions of this question which were rendered before and those which were rendered after the opinion in the McDaniels Case, but, so far as we have been able to learn, it has never cited or referred to the declaration in that case upon this subject from the year 1882, when it was rendered, to the present day, except in the single case of Texas & Pac. Ry. Co. v. Behymer, 189 U. S. 468, 470, 23 Sup. Ct. 622, 47 L. Ed. 905. In that case the question was not controlling. It received no discussion. The court declared that a charge which made ordinary care—"that is, the care that a person of ordinary prudence would use under the same circumstances"—the test of liability was right, and then, apparently casually, said that "what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not," and cited Wabash R. Co. v. McDaniels. With this single exception, the decision in the McDaniels Case has suffered that silent repudiation which is the accustomed fate of opinions of that court which it subsequently finds to be erroneous.

In Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485, the Supreme Court decided that the exact converse of that declaration was the law.

In Union Pac. R. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597, the charge of the court was that the duty of exercising ordinary care to employ competent servants "was discharged by the defendant if the care disclosed by it in these several matters accorded with that reasonable skill and prudence and care which careful, prudent men engaged in the same kind of business ordinarily exercise," and the Supreme Court failed to suggest that this statement of the law was either erroneous or inaccurate.

In Washington, etc., R. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235, that court decided that a charge that one was only bound to use ordinary care and prudence in the selection, arrangement, and care of its machinery was right, and in Texas & Pac. R. Co. v. Barrett, 166 U. S. 617, 619, 620, 17 Sup. Ct. 707, 41 L. Ed. 1136, that a charge that a master was bound to use reasonable care in providing and repairing machinery, and that "by ordinary care is meant such as a prudent man would use under the same circumstances," laid down "the applicable rules with sufficient accuracy and in substantial conformity with the views of this court as expressed in Hough v.

Railway Company, 100 U. S. 213, 25 L. Ed. 612; Northern Pacific Railroad v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Washington & Georgetown Railroad v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Union Pacific Railway v. Daniels, 152 U. S. 684, 688, 14 Sup. Ct. 756, 38 L. Ed. 597; Northern Pacific Railroad v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; and other cases."

In Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96, and in Choctaw, etc., R. Co. v. Holloway, 191 U. S. 334, 338, 24 Sup. Ct. 102, 48 L. Ed. 207, the Supreme Court again declared, after the foregoing definition of ordinary care had been repeatedly approved, that an employer is only required to use ordinary care to furnish reasonably safe and secure appliances and machinery.

And in Charnock v. Texas & Pac. R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057, that court laid down the general proposition that "negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent man would do or omit in such circumstances."

These later decisions of our highest judicial tribunal declare that the degree of care required of masters in dealing with their servants is ordinary care, and affirm the truth of that which seems axiomatic— that ordinary care is that care which ordinarily prudent and cautious men commonly exercise in similar circumstances. If prudent and humane officials who employ men for their masters partake of the infirmities of our common human nature and sometimes fail to exercise that high degree of care which they instinctively use to protect their own persons, then that degree of care is not ordinary, but is extraordinary care, and their master is not liable in damages for such a failure. The limit of the legal duty of such officials is the exercise of ordinary care, however so much higher in the varying conceptions of different minds may be their moral or ethical duty. For their failure to discharge the former, damages may be recovered of their master. But their failure, in common with all mankind, to perfectly discharge the latter, furnishes no cause of action in human tribunals. Any departure from this rule, any substitution for it of a test of liability which must necessarily change with the varying conceptions of moral duty, which will be formed after the events by the juries and courts that subsequently try the cases involving it, would put uncertainty, confusion, and injustice in the place of the proximate certainty of the law and its just administration.

In Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485, the Supreme Court decided that a charge to a jury was right which instructed them that negligence was "the failure to do what reasonable and prudent persons would ordinarily have done under the circumstances of the situation, or doing what reasonable and prudent persons, under the existing circumstances, would not have done. * * * You fix the standard for reasonable, prudent, and cautious men under the circumstances of the case as you find them, according to your judgment and experience of what that class of men would do under these circumstances, and then test the conduct involved and try it by that standard." From this rule that court has never since

departed.   Tested by it, the charge of the court below was erroneous, because it fixed the standard of negligence, not at what ordinarily prudent and cautious men do under like circumstances (that is to say, when their action does not involve their personal safety), but at what they do under radically different circumstances (that is to say, when their action does condition their personal safety).   The true test of the duty and liability of the master is that degree of care which ordinarily prudent, cautious, and humane officials commonly exercise under similar circumstances; not that which they would exercise under different circumstances when their personal safety was involved, and not that which courts and juries, unguided by this test might think, after the event, they ought to have exercised in view of some ethical standard which they might then approve.

Witnesses who acknowledged that they were not acquainted with the general reputation of the engineer were permitted to testify to his reputation among conductors and brakemen, excluding consideration of the engineers and others acquainted with the workman and his service.   The issue to which this testimony was directed was whether or not the reputation of Delano for incompetence was so notorious that the officers of the defendant whose duty it was to hire and discharge its servants would have been aware of it if they had exercised reasonable diligence.   Reputation among specific classes of men to which such officials did not belong, and which obviously included only a part of those who were acquainted with the operator or his service, was too restricted to meet this issue.   A reputation confined to only a part of those who must be familiar with the man and his service is not general reputation, and it is insufficient to evidence knowledge of that reputation by those who do not belong to the limited class in which it exists. General reputation alone is competent to charge the master with notice in cases where no knowledge of habitual incompetence of the servant is brought home to him.

Counsel for the defendant requested the court to give to the jury a charge which they had prepared, which covers 9 pages of the printed record and is divided into 30 paragraphs.   The court refused to grant this request, and the defendant excepted to its refusal to give these 30 paragraphs, which in its exception it termed "instructions."   A single exception to a refusal to give a series of instructions is futile if any proposition of law or of fact embodied in the instructions is either erroneous or inapplicable to the case.   The only question which such an exception presents is whether or not all the instructions thus requested should have been given, and, if any of them should not have been submitted to the jury, the question of the correctness or applicability of the others is not presented to the appellate court for decision. In the series of instructions which counsel for the defendant requested there are several propositions of law which are erroneous, and some statements of fact that are inapplicable to the issues which the jury was required to determine.   The questions presented by many of the requests which are discussed in the briefs of counsel are therefore not here for our consideration, and they are dismissed.   Union Pacific Ry. Co. v. Callaghan, 161 U. S. 91, 95, 16 Sup. Ct. 493, 40 L. Ed. 628; Waples-Platter Co. v. Turner, 27 C. C. A. 439, 441, 83 Fed. 64, 66.

The various objections to the complaint in this action which were argued at the bar and presented in the briefs are purposely ignored, because this case must be tried again, and there will be opportunity to amend and reform the pleadings, so that any discussion of them now would serve no useful purpose.

The judgment below is reversed, and the case is remanded to the Circuit Court with instructions to grant a new trial.

HOOK, Circuit Judge (specially concurring). I concur in the reversal of the judgment in this case and in the reasons given therefor, excepting those pertaining to the measure of ordinary care, the exercise of which was incumbent upon the company, and the charge of the Circuit Court upon that subject.