JAMES  KAULANA  *v.*  OAHU  RAILWAY  &  LAND
    COMPANY,  AND  McCABE,  HAMILTON  &
    RENNY  COMPANY.

March 6, 1914.

1. *Negligence—Fellow servants:*  As a rule the master is not liable for injury to a servant caused by the negligence of a fellow servant in the course of the master's business.

2. *Same—Incompetent fellow servant—Burden of proof:*  Where exception to this rule is claimed by a servant by reason of injury resulting from the master's employment of an unskilled or incompetent fellow servant, the burden is on the injured servant to show the master's negligence in employing or retaining the unskilled or incompetent servant.

*In Admiralty:*    Libel *in personam* for damages for personal injuries.

*G. A. Davis (W. T. Rawlins* with him) for libelant.
*M. F. Prosser (Frear, Prosser, Anderson & Marx* with him) for libellees.

CLEMONS, J.    This i s a libel *in personam* to recover damages for injuries sustained by the libelant through alleged negligent acts of incompetent and unskilled servants of the libellees.    From the evidence adduced at the hearing, and the view of the locus in quo had by the court at the request, and in the presence, of the attorneys for all parties to the suit, the facts are found to be as hereinafter set forth.    They are given with some detail, so as to permit of the disposition of all possible questions of the law of master and servant, whether apparent in the pleadings or suggested by the evidence, i. e., in the pleadings as existing or as amendable to conform to the proof.

Injuries as alleged were received by the libelant, a servant of the libellee McCabe, Hamilton & Renny Company, employed in the operation of loading and stowing bags of sugar in the lower hold of the American steamship Columbian at the port of Honolulu.    The sugar was delivered over the side of the vessel at the upper deck by an electric elevator or endless chain carrier operated by servants of the libelee Oahu Railway & Land Company.    Thereafter it was handled exclusively by servants of the McCabe company, being guided by those servants so as to slide down inclined chutes to the several decks, until finally some, or all, of it ran to the lower hold by four chutes coming from the deck immediately above.    At each deck, before the sugar was diverted to different chutes to decks below, the bags ran on to a flat table so that their speed was checked and they could, therefore, be more easily handled and could be started on their new way with little momentum.

It having been found necessary to move the lower end of the chute at which the libelant was working, he signalled to two of the McCabe company's servants who were at the hatch above directing the sugar down the chute, to stop the stream of sugar bags until the end of the chute had been moved to a new position. The stream was stopped for about seven or eight minutes and before the libelant had carried the end of the chute to its final place, the servants above started another bag on its way down the chute, and although one of them shouted to the libelant to "look out," the bag struck the libelant in the leg before he could drop the chute and jump out of the way, causing the injuries which are the basis of the libel. Another servant, Kaikai, was assisting the libelant at the time, there usually having been two additional assistants but these having gone above temporarily to obtain relief from weeping eyes caused by the presence of fresh paint in the hold. It was the custom for one or two men of the gang at each chute to lay off from time to time to rest, to go to the toilet, or for other reasons, and it was testified that as the end of the chute was kept within three or four feet of where the sugar was being stowed, two men were always able to handle it. Kikapa, a fellow worker, witness for the libelant, testified that "when the sugar comes right down to where you are working [as was the case here], you don't need so many; these others can get a rest." The sugar ordinarily came aboard ship at the rate of from 18 to 20 bags per minute, but as the work was at this time being rushed, the rate was double, or about 40 per minute, the highest average rate for each of the four chutes below being 10 bags per minute. When sugar was left on the deck above, of course the rate would be lower at each of the other chutes according to the amount left on the way, and when the flow was stopped at any one chute the rate would be higher.

The libelant's affirmative answer to the questions, "Did they sing out to the fellows in the tower?" and "Did they

stop the machinery?" might be taken to imply negligence on the part of servants of the railway company in again starting the stream of sugar bags before a signal had reached the tower of the elevator, that the chute below had been safely moved. But it may be observed, that so far as concerns the libelant's testimony that the man above whom he asked to "stop the sugar on top," said "all right, they stop the sugar," and "sung out to the fellows in the tower," the libelant was not in a position to know whether any such message was passed on up through the decks above and then over the side of the vessel to the tower, which was on the wharf some distance away.—This was a point which it was incumbent upon the libelant to clear up by testimony, but we have only his own testimony above quoted, against which are the circumstances suggested, and the positive testimony of the foreman of the work, the libelant's own witness Sam Ku, that the men in the tower were not told to stop the machinery, and that such a course was not necessary. And we see elsewhere in the libelant's testimony that his knowledge of what went on above was unreliable—not false, but mistaken; thus, at first he said that the machinery was stopped upon his request, but finally he said that "they didn't stop the machinery; we didn't hear the machinery when they stopped." When he testified "we stopped the fellows from *pushing* sugar down," he told, from my judgment of the testimony and the circumstances in evidence, just what happened.

[1] The facts establish no negligence on the part of the railway company. They establish, or even if they did not it may at least be assumed that they establish, the negligence of the McCabe company's servants in charge of the chute above in permitting the bag of sugar to go down the chute before the libelant had placed the lower end of the chute in the desired position. As the negligence is that of fellow servants, the master is not liable, unless there is something in the facts to make the case an exception to

the rule. *Southern Pacific Co. v. Hetzer*, 135 Fed. 272, 275-276; *Mejea v. Whitehouse*, 19 Haw. 159, 160-161; *Silva v. Ewa Plantation Co.*, 21 Haw. 129, 130-131, 132. The only exception alleged consists in the wrong of the masters in employing unskilled and incompetent servants, but this allegation is not borne out by the facts. Indeed, the libelant is himself a witness to the experience and competency of the men immediately responsible for the injuries.

[2] Cooley states the rule to be that the burden is on the plaintiff to show the master's negligence in employing or retaining the servant whose act or omission caused the injury. 2 Cooley, Torts, 2d ed., 1155. And see *Gravelle v. Minneapolis & St. Louis Ry.*, 10 Fed. 711, holding that skill and competency are presumed.

Counsel for libelant has suggested that negligence is apparent in the McCabe company's not furnishing sufficient men for this chute, and contends that the absence of the men who had gone above left such an inadequate force below that there became a congestion of sugar bags so great that the libelant and Kaikai could not handle it. There is no evidence of the inability of these two men to handle the sugar at this chute,—indeed, the evidence is to the contrary; and the only just conclusion from the testimony is that the chute had to be moved, not because of any congestion, i. e., undue accumulation, of sugar, but for the reason merely that sufficient sugar had been stowed at the foot of the chute and it became necessary to move to another place. In any event, even if the force below had been inadequate, the proximate cause of the injury was the negligence of the fellow servants at the hatch above.

Wherefore, the court must find, and does hereby find, for the libellees. A decree in conformity with this finding will be signed on presentation.