### THE JOSEPH JOHN.

#### LIMITED LIABILITY CO. v. STARSTROM et al.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1898.)

#### No. 605.

SHIPPING—INJURY TO STEVEDORE.

Where a stevedore's employé was injured by the falling into the hold of bags of freight from the sling, and the evidence showed that the accident was due to the combined carelessness of the employés on the barge from which the freight was being taken, of other employés of the stevedore, and of a seaman employed at the winch, together with some negligence on the part of the injured person himself, *held*, that the ship was not liable, especially in the absence of any evidence of want of care by the master or owners in selecting the winch man.

Appeal from the District Court of the United States for the Eastern District of Texas.

W. B. Lockhart, for appellant.
John D. Fearhake and M. H. Royston, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge. This is an appeal from a final decree of the district court in favor of John Starstrom, libelant, against the Limited Liability Company, claimant of the steamship Joseph John, awarding the said Starstrom the sum of $1,000, with interest and costs, as damages for personal injuries suffered by him while employed

in receiving and stowing cargo on board the steamship Joseph John. The original libel propounded as follows:

"First. That on or about the 13th day of September, in the year 1894, this libelant was employed as a laborer by Dolson & Nelson, stevedores, on board the steamship Joseph John, 'for the purpose and in the capacity of assisting in receiving and stowing a cargo in said vessel, and while the said vessel was lying at the port of Galveston, and that the said vessel was being loaded under the supervision and direction of T. S. Tullock, the master of the said steamship Joseph John. Second.. That while serving in the capacity aforesaid this libelant was stationed in the hold of said vessel, and that while so stationed and engaged in the discharge of his duties this libelant was, without any fault on his part, knocked down by the falling into said hold of certain bags filled with cotton seed oil cake; that the said bags of oil cake were of great weight, and the force of the blows was so strong as to render this libelant unconscious, causing blood to flow from his ears and eyes, and greatly bruising and lacerating his arm and leg, rendering the use of said arm of little or no value to him, and making him a cripple for life; that the injury to the leg was near or at the ankle, and resulted in straining the ankle to such an extent as to greatly impede this libelant in the future use of said leg and ankle; that by reason of the severe injuries hereinbefore set forth this libelant was confined in the hospital for a space of four weeks, and his capacity for earning a livelihood greatly diminished. Third. This libelant alleges that the duty of loading said steamship was upon the said T. S. Tullock, the master as aforesaid, and was conducted under his direction, and that the said master had placed in charge of the steam winch used for lowering the freight into the hold an ignorant and careless seaman, one of the crew of the said steamship, and that through the negligence and carelessness of the said seaman in allowing the sling in which the freight was hoisted from the wharf to swing over the hatchway, and strike against the side thereof, the said bags of oil cake became displaced and loosened, and fell through said hatchway upon this libelant; and that no warning was given in any manner whatsoever. Fourth. That this libelant was an able-bodied laborer at the time of the injury aforesaid, and in that capacity was earning the sum of four and no-100 dollars per day, and that by reason of the injury as alleged he has been unable to earn that sum or any other sum, and the suffering consequent upon the said injury has been both a physical and mental strain, and this libelant alleges that he has consequently been damaged in the sum of six thousand dollars. Fifth. That all and singular the premises are true, and within the admiralty and maritime jurisdiction of the United States and of this honorable court."

Exceptions were filed to this libel to the effect that the same was not sufficient to entitle the libelant to recover, because the allegations therein show that the libelant and the winch man, through whose negligence and carelessness the alleged accident was caused, were fellow servants engaged in common employment under the same control. This exception was sustained, whereupon, on leave, an amended libel was filed in which the third article of the original libel was enlarged so as to read:

"Third. This libelant alleges that the duty of loading said steamship was upon the said T. S. Tullock, the master, as aforesaid, and was conducted under his direction, and that the said master had placed in charge of the steam winch used for lowering the freight into the hold an ignorant, incompetent, and careless seaman, one of the crew of said steamship, and that the said master knew of said seaman's incompetency, ignorance, and carelessness, or by the exercise of ordinary care and diligence might have known thereof; and your libelant had no way of knowing and determining the ignorance and incompetency of the said seaman, said member of the crew being in the employ of the master of the said vessel, receiving his pay from said master, and being at all times under the direction and control of the said master; that through the negligence and carelessness of the said seaman in allowing the sling in which the freight was hoisted from

the wharf, to swing over the hatchway, and strike against the side thereof, the said bags of oil cake became displaced and loosened and fell through said hatchway upon this libelant, and that no warning was given in any manner whatever,"

—But otherwise the amended libel was substantially like the original.

The amended libel was answered by exceptions of no cause of action, laches, the general issue, and the special defenses that the libelant was injured, if at all, through the negligence of a fellow servant, and that he was guilty of contributory negligence. There were other pleadings in the nature of exceptions, amendments, and calls in warranty and for contribution, not necessary to be set forth. The material facts of the case, briefly stated, were as follows: The steamship Joseph John was being loaded with cotton seed oil meal in the port of Galveston by charterers under a charter party which provided that charterers' stevedore was to be employed under the direction of the master. Bags of cotton seed oil cake were taken from a barge of the Houston Direct Navigation Company lying alongside, hoisted in slings by means of a swinging derrick operated by a steam winch furnished by the ship. The swinging derrick was controlled by guys regulated by the stevedores' men, and the steam winch was operated by a seaman furnished by the ship. The cotton seed meal was being stowed in the after-hold, at the bottom of which, and running along through the middle of the hold lengthwise, and directly under the hatch, was a tunnel about six feet high and four or five feet wide, containing the propeller shaft. The manner of work was that the slings would be filled by the employés of the barge, then hoisted by means of the derrick and steam winch, and, when at a sufficient height, be swung over the hatch, when, under orders from a gangway man employed by the stevedores, they would be lowered into the hatch, where four men—two on each side of the tunnel—were stationed to receive and stow the meal, sling loads being alternately deposited on each side of the tunnel. There was evidence tending to show that the guy regulating the swing of the derrick on the side towards the barge, and which was managed by a stevedores' man, was a little too slack, sometimes allowing the sling load to swing too far over the hatch before lowering. The libelant was one of the gang of four men employed to stow the cargo, and with one companion taking care of each alternate sling load as it was deposited on his side of the tunnel. The work was carried on in as rapid a manner as its nature would permit, and had been so carried on for about four hours, when a sling was improperly loaded on board of the barge, the employés of the barge leaving the two parts of the sling close together instead of well separated, which load was hoisted by the machinery to the proper height, and then swung over the hatch so far that in lowering it the load struck the combing of the hatch, and the bags, being slippery, fell out of the sling into the hold, striking the libelant, and injuring him substantially as set forth in the libel. The gangway man, as usual, called out to "stand from under," he says, several times, and the evidence tends to show that, at the time the sling load swung over, the gangway man ordered the winch man to hold the load without lowering. and probably for the purpose of letting it swing back to the middle of the hatch, though, if such orders were

given, the winch man did not understand them. The libelant admits hearing the gangway man's warning of the coming sling load, but insists that he got out of the way, and over into the wing of the ship, as soon and as far as he could, and that his injury came from the falling meal striking the tunnel, and glancing off into the wing of the ship; but it is more likely, from the entire evidence, that, as the expected load was, in order, due to be loaded on the other side of the tunnel, the libelant did not attempt to stand from under until too late to avoid injury. The winch man was not only an able seaman, but had previously operated the winch successfully, and with the usual care. Ordinarily, the winch would have been operated by a direct employé of the stevedore, but on the occasion in question the master of the ship furnished the winch man at the special request of the managing stevedores. The ship's appliances furnished for the business of loading were all properly rigged, and usually safe, and they in no wise, from any defect, contributed to the libelant's injury.

The consideration of the whole evidence leads us to the conclusion that the libelant's injuries were caused by the carelessness of the employés on the barge, of the stevedores' direct employés on the deck of the ship, of the seaman running the winch, and of the libelant himself, all combined and tending to the resulting accident. Under this state of the facts, it is difficult to see wherein the ship was in any wise liable for the libelant's injuries. No foresight or precaution required of the master and owners of the ship would have prevented the accident. If the work was carried on too rapidly, or if the guys to the derrick were too slack, allowing sling loads to swing too far over the hatch, and either contributed in any way to the accident, they were both matters not under the control of the master and owners, but directly under the control of the stevedores and their employés. It is contended that the seaman in charge of the winch was negligent in managing and operating the winch, and, if this is conceded,—though by no means fully proved,—still, as there is no evidence to show that the master and owners did not use due precaution and care in selecting him for the work, and as he was for the time being in the service of and under the control of the stevedores, the master and owners cannot be held responsible for his negligence. As a matter of fact, all the persons employed in taking aboard, lowering, and stowing cargo were in the direct service of the stevedores, no matter by whom eventually their wages were to be paid. If, however, it should be considered that the loading was being carried on for and in the interest and service of the ship, then all the employés engaged in such loading were indirectly the servants of the ship, engaged in a common employment, using the master's appliances at the same time and under such circumstances that the negligence of one might result in injury to another; and in that view of the case, assuming that the libelant was injured by the negligence of the winch man, it is perfectly clear that the winch man was a fellow servant, and his negligence was one of the risks of the employment assumed by the libelant when he entered upon the services. The decree of the district court should be reversed, and the libel should be dismissed. This conclusion rendered it unnecessary to pass upon the varied ques-

tions presented with reference to the liability of the stevedores to contribute in case the ship should be condemned, and also as to libelant's right to recover in admiralty, although himself guilty of contributory negligence.

The costs in this case have been very largely enhanced by the calls in warranty, and the libelant ought not be condemned to pay all the costs of the district court nor all the costs of this court. It is therefore ordered and adjudged that the decree of the district court be reversed, and this cause remanded, with instructions to dismiss the libel, and that all the costs of this and the lower court be equally divided between the libelant and the claimant.