## THE SLINGSBY.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

### No. 50.

1. MASTER AND SERVANT—FELLOW SERVANTS—SERVANTS OF SEPARATE MASTERS IN SAME WORK.

When A. and not B. is the one who selects and retains an individual at the particular piece of work to which he is assigned, such individual does not become B.'s servant merely because the latter indirectly pays for his services and gives him his working orders.

2. SAME—INJURY OF SERVANT.

A firm of stevedores contracted to discharge and load a vessel, being required to furnish all labor and appliances except winches and winch-

---

¶ 1. Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596, 25 L. R. A. 470; Flippin v. Kimball, 31 C. C. A. 286.

men. The captain detailed a seaman to run the winch, and, through his negligence, plaintiff, an employé of the stevedores, was injured. As to the operation and movements of the winch in handling cargo, the winchman was under the direction of the stevedores. *Held*, that since the stevedores had no power to discharge the winchman, or to require him to perform any other duty, or to substitute any other person in his place, he did not become their servant while in the service, but remained the servant of the ship, which was liable to plaintiff for his negligence.

3. ADMIRALTY—LIBEL IN REM—LACHES.
One having a cause of action in rem against a foreign vessel is not required to find out whether the owners have other property within the jurisdiction which might be attached, nor chargeable with laches, where he libels the ship on her second trip to the port, where she had previously been out 41 days in all since the cause of action arose.

Appeal from the District Court of the United States for the Eastern District of New York.

For opinion below, see 116 Fed. 227.

This cause comes here upon appeal from a decree in favor of libelant against the steamship Slingsby for personal injuries sustained while engaged in discharging cargo. The cause of the injury was alleged to be the negligent starting of the winch without orders, while the libelant was assisting in tightening up the rigging and tackle used in connection with the hoisting derrick. The facts relevant to the assignments of error are sufficiently set forth in the opinion.

J. Parker Kirlin, for appellant.
Wm. C. Beecher, for libelant.
L. Sidney Carreal, for respondents.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. It is contended that the court erred in holding that the proof showed that the winchman, Johnson, negligently started up the winch without orders. This assignment of error is without merit. The winchman, a foreign sailor, had disappeared before the trial, and his testimony was not produced. Libelant, however, called other men who were employed about the work, and who neither heard nor saw any orders; orders are sometimes given by waving an arm. In addition to that, another employé of the stevedores, also named Johnson, testified that he was the one who gave orders to the winchman, and after describing the orders given immediately prior to the accident, and what was done in response to them, added: "Travers was going to give a pull, and pull out the fall [which had fouled with the bitt], and the first thing I knew the winchman went ahead with the winch." The testimony fully sustained the finding.

There is some dispute on the testimony as to whether the derrick was rigged in the proper way, but the District Judge saw the witnesses, and we find no reason to differ from his conclusion that there was no contributory negligence on the part of the libelant nor any negligence on the part of any of the persons with whom he was work-ing except the winchman. The real question in the case, to which

argument has been principally addressed, is whether the winchman was or was not the fellow servant of libelant.

Libelant was employed by the firm of stevedores (Trecartin and Turner) who were engaged in discharging cargo. The winchman was an able seaman, regularly shipped on the Slingsby, with which he had made two voyages. The contract between the stevedores and the vessel is in writing, and was put in evidence. By it the stevedores agreed to "discharge and load," which imports that they will furnish all the labor and appliances required to do so, except as may be otherwise specified. The only additional relevant clause in the contract reads as follows: "Steamship to furnish winches, drivers (rope runners and slings furnished by stevedores)." The District Judge held that the winchman was the servant of the ship, and that for his negligence libelant, who was the servant of the stevedores, was entitled to recover against her. The claimant insists that this is error. His contention is thus epitomized in the brief:

"The whole direction of the servant being in the hands of independent contractors, and the original employers having relinquished all control over him, while he was engaged in the performance of the work that was being done by the contractors, the latter, and not the shipowners, are to be treated as the masters."

It is well settled that A. and B. may by their respective servants undertake the doing of some particular work, each selecting and paying his own servants, and retaining the right to discharge them from service for proper cause. In such case each servant remains in law the servant of his particular employer, and the circumstance that they all work at the same time, and that the orders which direct the joint application of their individual energies are given by some one foreman or overseer or director, does not change their legal relations. The servants of A. do not become fellow servants with the servants of B. So, too, it is equally well settled that A. may lend or hire his servants to B., to be employed either in B.'s work, or in A.'s putting them so entirely at B.'s disposal that they become pro hac vice B.'s servants and fellow servants with all others in B.'s employ. Within which category a particular case is to be grouped depends upon its own peculiar facts, and before examining the authorities cited by the appellant it will be best to set down the facts in this case which have either been proved or are to be fairly inferred from the testimony. The winchman was in the general employ of the shipowners, selected by them as an able seaman, and received his pay from them. Neither of these circumstances is of much moment. Persons in the general employ of one man may nevertheless be in the special employ of another, and the price which the stevedores charged for unloading was undoubtedly less than it would have been had not the ship furnished winches and drivers. Indirectly, therefore, the pay for his work as winchman may be said to have come from the stevedores. He was selected for the particular work of running this winch by the ship's captain, selected because the captain "had always found him a good man; that is the reason [the captain] put him there." Neither about his selection generally nor about his assignment to work at this winch did the stevedores have anything to say. Once assigned and at work

he took his orders from the stevedores' representatives. Whether he should hoist or hold or lower, should work fast or slow, should suspend work or resume it, were all regulated by their orders. To that extent he was subject to their control, but they had no authority to change the character of his work, or to direct him to do anything else except to run that particular winch. If dissatisfied with the way in which he did the work, the stevedores might complain to the captain, who would then have made a change, if he saw fit to do so, putting in his place some other servant of the ship selected by himself. If there had been no complaint at all about the winchman, if, on the contrary, the stevedores were highly pleased with the careful way in which he did the work, and were most solicitous to retain him, nevertheless the captain could have removed him in order to employ him in other ship's work, and have substituted another member of the crew in his place. If objection were made by the stevedores to the winchman, and the captain nevertheless declined to make any change, all that they could do would be to decline to proceed with the work. They could not remove him, nor, if he had left the winch, could they send any of their own men to run the ship's machine on the ship's deck. It will thus be seen that, although the general method of doing the work was determined by the stevedores, who could dispose of their own immediate servants as they pleased—such a one to the slings, such another to the guy rope, and so on—could remove and substitute human agencies at their own pleasure, the fact remains that Johnson's presence as winchman was determined by the ship, which selected and which alone could remove him. Of all the tests which have been suggested, and the authorities are far from uniform, it would seem that this, the power of substitution of one man for another, is the most satisfactory. It may not in all cases be as apparent as it is in this one that B. has no power to remove or differently employ the individual whom A. has selected and assigned to a special line of work, but when it does the amount of control which B. exercises over the individual is surely insufficient to establish, even pro hac vice, the relation of master and servant. And it is thought that whatever variances there may be between the conclusions herein expressed and those enumerated in some of the authorities cited are due to variances in the facts, which are not always quite fully set forth in the reports of those authorities. Those relied on by appellant are:

Rourke v. White Moss Colliery Co., 2 C. P. Div. 205. There the defendants were sinking a shaft in their colliery. One Whittle had contracted to do the sinking and excavating at a certain price, defendant to provide and place at his disposal the necessary engine power, ropes, etc., together with the engineer to work the engine. It was held that the engineer was a fellow servant of Whittle's employés. Cockburn, C. J., says that although his mind fluctuated during the argument he was led to the opinion he formed by certain answers to interrogatories. Stating their substance, he says: "The company, having already an engine and attendants on the spot, say to the contractor: 'We will let you have them to do your work and be under your control.' * * * It appears to me that the defendants put the

engine and this man at Whittle's disposal, just as much as if they had lent both to him." As the other judges express it, "the engineer was to be under the orders and control of the contractor."

In Donovan v. Laing [1893] 1 Q. B. 629, defendant's crane for loading ships with a man in charge of it was hired to a firm of wharfingers. The man in charge was held a servant of the firm. Lord Esher says: "As to the working of the crane, he was no longer defendant's servant, but bound to work under the orders of Jones & Co., and, if they saw the man misconducting himself in working the crane or disobeying their orders, they would have a right to discharge him from that employment." The statement of facts does not show whether this assumption of the learned Master of the Rolls was fully warranted by the proof, but the decision is to be taken as authority only in cases where this right to discharge from the particular employment exists.

In Murray v. Currie, L. R. 6 C. P. 24, defendant employed a stevedore to unload his vessel. The stevedore employed his own laborers, among whom was the plaintiff. Defendant furnished winches, and at the time of the accident one of the ship's crew was running the winch. It appeared that the ship furnished several of the crew to work at unloading under the stevedore. The ship selected those of the crew who were employed in unloading, but the stevedore selected the work for them and had control over it, and "could have refused to employ Davis," if he chose, while the defendant "could not have taken him away from the work." This is a widely different case from the one at bar.

In The Joseph John, 30 C. C. A. 199, 86 Fed. 471, the United States Circuit Court of Appeals, Fifth Circuit, per Pardee, Circuit Judge, says: "The winchman was for the time being in the service of and under the control of the stevedores;" but the statement is extremely meager, and there is nothing to show what measure of control as to removal from service the stevedores possessed.

In Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, defendants who were manufacturers of fireworks sold some to a committee of citizens, and sent with the fireworks two of their employés to assist in handling them. An accident resulting, it was held that these were servants of the committee. The committee, however, had full control over them; it could use them or not to handle the fireworks as it pleased; could discharge either or both from that employment at any time, and substitute whomsoever it pleased.

In The Turquoise (D. C.) 114 Fed. 402, the winchmen were held by Judge McPherson not to be servants of the ship, because "during the night, when the accident happened, they were working under a special contract of hire, either for the consignee or the head stevedore." What the terms of that special contract were, the report of the case does not disclose.

In Coughlan v. Cambridge, 166 Mass. 268, 44 N. E. 218, defendant, a municipal corporation, was engaged in transporting gravel over a temporary track by means of a locomotive, open gravel cars, and train hands hired by it from a railroad company. The court held that the conductor was the servant of the defendant, saying:

"The fact that the running of the train was entirely under the control of the conductor does not show that he and the others were not servants of the city. A locomotive, and cars without men to run them, would have been useless. Instead of hiring trainmen outside, the city hired them of the railroad, with the train. No doubt it was expected by the company and the city that the men hired by the company would continue to run the train till the work was finished. But there was nothing in the contract which prevented the city from discharging the men, and hiring others in their places, if it saw fit to incur the additional expense which would be thus caused."

The contract is not given in the report, so it is impossible to say whether the Fitchburg Railroad actually turned over a valuable engine to the municipality with full power to discharge the railroad's engineer, and substitute in his place whomsoever the municipality might select. If it did, undoubtedly the latter acquired full control both of the engine and the engineer, but that is not the case at bar.

The appeal at bar is from Judge Thomas, who disposed of the case in a brief memorandum, because he had recently discussed this question in The Lisnacrieve (D. C.) 87 Fed. 570. Reference may be had to that case for a careful résumé of the authorities. In that as in this the winchman was held to be the servant, not of the stevedores, but of the ship, because "the shipowners chose him. The stevedore was obliged to take him or no one. The ship alone had knowledge of his competency; had alone investigated or tested it. The ship placed or retained him in charge of the winch. The stevedore could not send him to or from it."

It is unnecessary to multiply citations. The authorities are not uniform, and it is useless to undertake to harmonize them. See Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, and Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673. It would be a difficult matter to formulate a test which would be at once comprehensive enough and specific enough to cover all possible cases. Suffice it to say that when, as in this case, A., and not B., is the one who selects and retains the individual at the particular piece of work to which he is assigned, such individual does not become B.'s servant merely because the latter indirectly pays for his services and gives him his working orders.

It is further contended that the District Court erred in not finding that the libelant's claim against the vessel had been barred by laches. The accident happened October 7, 1897. The vessel sailed for foreign parts October 16, 1897, while Travers was still in the hospital, and did not arrive in New York again until September 20, 1899. She remained in this port until October 22, 1899, when she sailed for Wilmington, N. C. She next returned to New York on November 17, 1900, and was libeled on the 22d of that month. The mere statement of these facts is sufficient to show that there was no laches in proceeding against the steamer. She was within the jurisdiction only 41 days all told between the injury and the libel. Appellant's contention, however, is that action might have been brought against R. Ropner & Co. personally. They are residents of England, and could not have been served; but an attachment might have issued against them as nonresidents, and been levied upon property of theirs found here. Evidence was put in showing that several other vessels belong-

ing to the same owners were from time to time in the port of New York and might have been attached in such an action. But it is not shown that libelant knew what vessels R. Ropner & Co. owned, and we are satisfied that he was under no obligation to find out, and to keep track of their movements from port to port.

The decree of the District Court is affirmed, with interest and costs.