---

### THE MAUD.

(District Court, S. D. Alabama. April 8, 1909.)

#### No. 1,193.

SHIPPING (§ 84*)—LIABILITY OF VESSEL FOR INJURY TO STEVEDORE'S EMPLOYÉ —NEGLIGENCE OF WINCHMAN.

A ship, under agreement to furnish to stevedores a winch and winchman to be used in loading, which furnished a winch in good order and a competent winchman, is not responsible for an act of negligence on the part of the winchman in loading, by which a stevedore's employe was injured.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

In Admiralty. Suit for personal injuries.

Roach & Chamberlain, for libelant.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. Libelant was employed by and working for a stevedore, who was loading the steamship Maud with lumber. A member of the crew of the ship was at the winch. The ship furnished the winch, the winchman, and the power to run it. The

lumber was being loaded from the wharf. In hoisting a "sling of lumber" onto the ship, the lumber came down on libelant, who was on deck in the performance of his duty in stowing the lumber, threw him against the rail, and severely injured him. The libel alleges that said injuries were due wholly to the negligence and want of proper care on the part of the said winchman. The libel further alleges that said winchman was incompetent for the discharge of the duties devolving upon him as a winchman, and that the master of the ship knew of such incompetence; and it charges that the ship is liable for the injuries complained of for the negligence of the master in selecting such incompetent winchman to operate the winch. Respondent denies, among other things, that said winchman was incompetent for the duties devolving upon him as such; also denies that the master of the ship knew of any such incompetency, or that there were any circumstances from which he ought to have known it; and denies that the ship is in any wise liable for the injury complained of.

The evidence in the case fails to show that the said winchman was incompetent as alleged. If he was in fact incompetent, it fails to show that the master of the ship had any knowledge of it, or of any circumstances that would charge him with such knowledge. On the contrary, the evidence tends to show that said winchman was fully competent to perform the services for which he was selected, and that the master of the ship had every reason to believe him to be competent. Said winchman's long service as a seaman on the ship, his services and experience as a winchman on her, and the master's observation and knowledge of such services, which are shown to have been entirely satisfactory, all tend to show that the master had no knowledge of said seaman's incompetency as a winchman, and no reason to suspect his incompetency. I find no evidence to show that the master of the ship did not use due precaution and care in selecting said seaman for the work of a winchman.

The court, in the case of The Elton, 142 Fed. 367, 73 C. C. A. 467, held:

"That, if ordinary care was exercised by the master of the vessel to furnish a competent winchman, the vessel was not liable for an injury to a stevedore resulting from a negligent act of the winchman."

That was a case where the ship agreed to, and did, furnish a winchman, in which the court said:

"If it furnished a competent winchman to do the work for the charterers, or stevedores employed by them, the ship is not responsible for an act of negligence, if any, on the part of the winchman during the loading, whether he should be deemed a fellow servant of the libelant or not."

In that case, however, the court said:

"We think that the true test of fellow servant is whether both are at the precise time of the accident working in a common employment under the same general control and direction,"

—and held that the libelant and the winchman were fellow servants. The court further said:

"The ship being under obligation or agreement to furnish to the stevedores winches and a winchman to be used in loading the ship, its whole duty was

performed when it furnished properly constructed winches in good order and a winchman employed with due and reasonable care as to his skill and competency." The Elton, 142 Fed. 367, 73 C. C. A. 467.

The court, in The Elton, say that there is a want of harmony in the cases as to the general question whether men in the position of the libelant and winchman are fellow servants. But they think reason and the weight of authority support their view. If it were necessary for this court to determine that question in the case at bar, it would follow the ruling of the court in The Elton, as I think, as said by that court, that "reason and the weight of authority support their view."

My view of this case, however, renders it unnecessary to pass on the question of fellow servant raised in it. There is no evidence here under what sort of contract or arrangement, or by whose employment, the stevedores were loading the ship. The ship furnished the winch and the winchman to operate it. Whether they were hired or loaned to the stevedores we are not informed. But, in my opinion, that makes no difference, so far as the liability of the ship is concerned. If it furnished a winch in good order (as to which there is no question), and a competent winchman to do the work for the charterers or the stevedores, the ship's whole duty was performed, and it is not responsible for an act of negligence, if any, on the part of the winchman during the loading.

In the case of The Joseph John, 86 Fed. 471, 30 C. C. A. 199, the Circuit Court of Appeals of this circuit, Judge Pardee speaking for the court, said:

"If the seaman in charge of the ship's winch was negligent in managing and operating the winch, still as there was no evidence to show that the master of the ship did not use due precaution and care in selecting him for the work, and as he was for the time being in the service of and under the control of the stevedores, the master cannot be held responsible for his negligence. As a matter of fact, all the persons employed in taking aboard and stowing cargo were in the direct service of the stevedores, no matter by whom eventually their wages were paid."

The court further said:

"If it should be considered that the loading was being carried on for and in the interest and service of the ship, then all the employés engaged in such loading were indirectly the servants of the ship, engaged in a common employment, using the master's appliances at the same time and under such circumstances that the negligence of one might result in injury to another; and in that view of the case, if the libelant was injured by the negligence of the winchman, it is perfectly clear that the winchman was a fellow servant, and for that reason the libelant could not recover."

In any aspect of this case, as presented on the evidence, my opinion is that the libelant is not entitled to recover against the ship.
The libel is therefore dismissed.