# JOSÉ LINO VALDIVIESO
### *v.*
# THE INSULAR LINE.

Ponce, In Admiralty, No. —.

ON EXCEPTIONS TO LIBEL.

Admiralty—General Exception.
  1. A general exception not alleging a particular defect will, like a general demurrer, not be considered by the court.

Admiralty—Federal Employers' Liability Act.
  2. The Federal employers' liability act will not be held to change admiralty rules, except where such change expressly appears to be intended.

Personal Injury—Cause.
  3. A libel must show that the injury complained of was caused by

Valdivieso v. The Insular Line.

the ship or its agents. In case of doubt the libel will be construed against the pleader.

Admiralty—Contributory Negligence.

4. Contributory negligence in admiralty comes up more properly upon the evidence than the pleadings, and is not necessarily a complete defense.

Admiralty—Assumption of Risk.

5. A member or employee of longshoremen unloading the ship by contract cannot hold the ship responsible for damages caused by another longshoreman or employee.

Ship—Safe Place.

6. It is the duty of the master and owner to provide a safe place for their employees to work; but leaving the hatches open during daylight, to sweeten the ship, does not violate this rule.

Cooper—Ship Negligence.

7. If a cooper employed by longshoremen to repair a box is injured by fault of the ship or a sailor, he can hold the ship responsible; *secus* as to negligence of other longshoremen.

Pleading—Negligence.

8. A general allegation of negligence on the part of the ship or its officers is not sufficient. Negligence is a conclusion of law, and facts showing it must be pleaded.

Opinion filed January 16, 1914.

_Mr. N. B. K. Pettingill_ for exceptor.

_Mr. E. F. Colon_ for libellant.

HAMILTON, Judge, delivered the following opinion:

The libel was filed in the district court at Ponce, setting out that the libellant, on the 22d day of April, 1913, was employed as a cooper, repairing a box of merchandise which had

fallen to the lower deck of the steamship S. V. Luckenbach, and while attending to his work another box of about 75 pounds fell upon him from the 'tween deck hatchway, where the longshoremen were working, at a distance of about 20 feet, injuring him seriously. The libel states that, to effect the unloading of the steamship, a number of workingmen were hired, among whom was libellant, and he states that he worked where he did in compliance with orders given him by the foreman. The damages are alleged to have been caused by the negligence and gross fault of the officers of the steamship in that the hatchway in the 'tween deck through which the boxes fell was open when the steamer entered the harbor, open when the men were at work there, and open until the happening of the accident, and the officers of the ship were notified in time of said fact. The defendant, the Insular Line, is alleged to be a corporation of the state of Maine, with its principal office at San Juan, Porto Rico, and engaged in the transportation of passengers and freight between New York and Porto Rico through common carriers by water, and as such managing a line of steamships, among which is the steamer in question.

1. The exceptions set up, in the first place, that the facts alleged are not such as to entitle libellant to any relief, and does not constitute a cause of action. This exception does not itself allege clearly any defect, and, as in the case of general demurrers, will not be considered. Rev. Stat. § 914, U. S. Comp. Stat. 1901, p. 684. It is accordingly overruled.

2. The second exception denies that the culpable acts charged had any causal connection with the injuries. It would seem from the libel that there was negligence on the part of some one which did cause the injury to the libellant. It is not part

of the function of a court to discuss abstract propositions. The court can only decide and express an opinion upon issues distinctly raised, either in the pleadings or on the evidence. On the argument the question was discussed whether this cause of action arose under the common carrier act of Congress of 1906, and the libel has been amended so as to present this question. The second exception may be held to deny this averment, and, as it will control the whole view to be taken of the case, it will now be discussed.

The act of Congress of June 11, 1906, 34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1911, p. 1316, has been declared by the Supreme Court unconstitutional so far as relates to commerce between the states. Employers' Liability Cases (Howard v. Illinois C. R. Co.) 207 U. S. 463, 52 L. ed. 297, 28 Sup. Ct. Rep. 141. It has been held, however, to be still in force in the territories, El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 54 L. ed. 106, 30 Sup. Ct. Rep. 21, and for the purposes of this act Porto Rico is to be considered a territory, as is held in principle in considering the later employers' liability act of 1908, in American R. Co. v. Birch, 224 U. S. 547, 56 L. ed. 879, 32 Sup. Ct. Rep. 603. The question now raised, however, is different, for it relates not to railroads on the one side, or to common-law cases on the other. The question is, Does the Federal employers' liability act apply to admiralty cases?

In the case at bar, which is brought in admiralty, the libel as amended distinctly states that the defendant is a common carrier between Porto Rico and New York. There is no question that Congress could amend the admiralty law, and it frequently has done so; but admiralty law is a thing apart, some-

Valdivieso v. The Insular Line.

thing which has grown up, and is not the direct creature of legislation. As Pardessus says, "The worst civil code would be one which should be intended for all nations indiscriminately; the worst maritime code, one which should be dictated by the special interest and particular influence of the customs of only one people." In many respects it is international in character, and it is not to be assumed that Congress means to alter it except where this expressly appears. This is also true of equity and bankruptcy, which, like admiralty, are proceedings before a judge, and not before a jury, and are pursued in different proceedings and come under a somewhat different principle from common-law cases. This view is further strengthened by the fact that the second section of the act in question expressly says that "all questions of negligence and contributory negligence shall be for the jury." The Federal employers' liability act of 1906, therefore, cannot be held to apply to cases in admiralty, and, to the extent that the exception raises this point, it is sustained.

3. The exception under discussion raises the further point that what is alleged against the steamship does not appear to have had any causal connection with the injuries complained of. The only facts distinctly alleged in the libel against the steamship are that it was lying in the harbor at Ponce, for the purpose of discharging a general cargo of merchandise, and that a number of longshoremen were hired by someone. It is not clear whether this was done by the officers of the ship, by the consignee or by someone else; and as the injury complained of seems to have resulted from the acts of these longshoremen, it must be held, construing the libel more strongly against the pleader, that this was not the act or fault of the ship. As it

Valdivieso v. The Insular Line.

stands now, therefore, the libel is subject to this exception, and the exception will be sustained.

4. It is alleged by exception numbered 3 that the libel does not allege that the libellant was where he was by any direction or procurement of the company, the ship, or their agents. This exception relates not to the act of the company or the ship, but to how the libellant got where he was when he was injured. The libel shows that the man was repairing a box which had been broken in falling through a hatchway, and was himself injured by another box falling through the same hatchway. The inference is drawn that he must have been under the hatchway, and knew that a box could fall through it, which actually resulted. This inference is correct, construing the whole libel against the pleader, and raises the question of contributory negligence. If the libellant went or remained in a dangerous position of his own accord, there was contributory negligence; this, however, is not always fatal, as contributory negligence in admiralty, if less than the negligence of the defendant, sometimes only reduces damages. It is not necessarily a complete defense. To the extent that the exception, therefore, raises the question of contributory negligence, it is overruled, as that should more properly come up on the evidence.

5. The third exception was argued upon the theory that the libellant assumed the risk of his employment, and cannot now claim damages which resulted from this assumption. Schlemmer v. Buffalo, R. & P. R. Co. 220 U. S. 590, 55 L. ed. 596, 31 Sup. Ct. Rep. 561. This is true of a ship's crew. They are, so to speak, a part of the ship, and take all the risks that a seaworthy ship takes. A ship and crew together make up one entity. The Osceola, 189 U. S. 158, 47 L. ed. 760, 23

Valdivieso v. The Insular Line.

Sup. Ct. Rep. 483; Olson v. Oregon Coal & Nav. Co. 44 C. C. A. 51, 53, 104 Fed. 574; The Elton, 73 C. C. A. 467, 142 Fed. 367. The case at bar, however, is not that of a ship's crew, but of a cooper, who has signed no shipping articles, and is not connected with the ship as such. He came on board, while the ship was in port, by the employment of someone, to repair damages to a broken box. The proper construction of the libel, as it stands, would be that he was employed by the longshoremen or stevedores, and not by the ship or its officers. In that case, if the ship was in proper condition at the time it was turned over to the stevedores, none of them or their employees could complain of a defect which some of them had caused. For the manner of carrying on the work the stevedores themselves are responsible. Deye v. Lodge & S. Mach. Tool Co. 70 C. C. A. 64, 137 Fed. 480; Bettis v. Frederick Leyland & Co. 82 C. C. A. 525, 153 Fed. 571; The St. Gothard, 83 C. C. A. 37, 153 Fed. 855; Chicago G. W. R. Co. v. Crotty, 4 L.R.A.(N.S.) 832, 73 C. C. A. 147, 141 Fed. 913.

6. But it is alleged in reply that it is the duty of the master and owners to provide a safe place for work, and to keep the premises reasonably secure against danger, even from their employees. The Joseph B. Thomas, 46 L.R.A. 58, 30 C. C. A. 333, 56 U. S. App. 619, 86 Fed. 658, 4 Am. Neg. Rep. 105; Gerrity v. The Kate Cann, 2 Fed. 241; The Frank & Willie, 45 Fed. 494, 496; Leathers v. Blessing, 105 U. S. 626, 629, 26 L. ed. 1192, 1193. And the particular application of this, according to the libel, is that the hatches were left open all during the stay of the ship in port. This overlooks the fact that it is not unusual to leave hatches open in order to "sweeten the ship," as it is called, that is, for ventilation. Leaving a

hatch open, therefore, cannot be assigned as negligence by any-one who is accustomed to work on the ship, whatever may be true of strangers invited on board. The case is even stronger where the time was broad daylight, as it seems to have been in the instance at bar. Hughes, Admiralty, p. 188; The Sara-toga, 36 C. C. A. 208, 94 Fed. 221; Roymann v. Brown, 44 C. C. A. 464, 105 Fed. 250. Furthermore, the control of the hatches during loading and unloading is the duty of the long-shoremen, and not of the ship's officers. McDonnell v. Oceanic Steam Nav. Co. 74 C. C. A. 500, 143 Fed. 480; Wholy v. British & F. S. S. Co. 96 C. C. A. 355, 171 Fed. 399; Horne v. George H. Hammond Co. 18 C. C. A. 54, 33 U. S. App. 362, 71 Fed. 314.

7. The result of the discussion, therefore, is that if the li-bellant was a longshoreman, or employed by the longshoremen, or working on a joint undertaking with the longshoremen, he cannot sue the ship or its owners for the results of an act of the longshoremen. It is possible that a fuller statement of the facts may obviate the defects set out. The principle involved is that the ship and its owners are bound to provide a reason-ably safe place for stevedores or other employees to work, but that, if the place originally safe becomes otherwise while in charge of the stevedores, and without time for the ship or owner to learn of the defect, the ship and owner are not liable. If, in the case at bar, the box which injured the libellant fell through the negligence of the ship or a sailor, the libellant would have a cause of action, provided the sailor was not acting with the stevedores in such a way as to be engaged in a common work at the time. The Elton, 73 C. C. A. 467, 142 Fed. 367. On the other hand, if the accident was caused by the negligence

of the foreman of the stevedores, and the libellant was acting under the employment and direction of this foreman, he could not recover, because of the assumption of risk incident to such joint employment. The question in admiralty is always as to the liability of the ship, its officers or owners, and not merely the fact whether the accident occurred on board the ship.

The third exception is sustained to the libel as at present filed, but ten days will be allowed for such further pleading as may be proper.

8. It is true that there is, near the close of the libel, a general allegation of negligence on the part of the ship and its officers; but this is not sufficient. Negligence is a conclusion of law, and fact must be stated showing negligence on the part of the defendant.

An order will be entered accordingly.